IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

AHDY BOLIS,                    )
LUCY BOLIS,                    )
Plaintiffs,                    )
                              )
v.                            )    CIV. ACTION NO. 1:24-0417-N
                              )
                              )
STATE FARM FIRE AND           )
CASUALTY COMPANY,             )
Defendant.                    )

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Defendant State Farm Fire and Casualty Company's ("State Farm") Motion for Partial Summary Judgment (Doc. 41) and Motion to Strike (Doc. 50).[1] The motions, having been fully briefed, are ripe for disposition. Upon due consideration, and for the reasons set forth herein, the motion to strike is **GRANTED** and the motion for partial summary judgment is **GRANTED.**

## I.    Procedural Background

Plaintiffs Ahdy Bolis and Lucy Bolis initiated a civil action in the Circuit Court of Baldwin County against State Farm for breach of contract and bad faith on October 10, 2024. (*See* Doc. 1, PageID.14). On November 14, 2024, State Farm removed the case to this Court under 28 U.S.C. § 1332 based on diversity jurisdiction. (*Id.*, PageID.1).

---

[1] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 12, 13).

State Farm filed a motion for partial summary judgment on October 10, 2025, and Plaintiffs filed their response on November 7, 2025. (Docs. 41, 49).[2] State Farm filed a reply brief on November 21, 2025. (Doc. 51).

Contemporaneous with its summary judgment reply brief, State Farm filed a "Motion to Strike Repair Estimate of Integrity Remodeling and Construction." (Doc. 50). Plaintiffs responded on December 4, 2025 (Doc. 53), and State Farm filed a reply brief on December 12, 2025. (Doc. 54). State Farm invokes Federal Rules of Civil Procedure 12(f), 26, and 37 and asks the Court to strike the repair estimate Plaintiffs submitted with their opposition to summary judgment—an estimate prepared by Integrity Remodeling and Construction LLC ("Integrity"). (Doc. 50, PageID.581; Doc. 49-4).

## II.    Factual Background

Ahdy and Lucy Bolis allege that on June 18, 2023, their home in Spanish Fort, Alabama was damaged by a windstorm. (Doc. 42, PageID.170; Doc. 49, PageID.533). The home was covered under a policy issued by State Farm. (*Id.*). The policy provided coverage for "accidental physical loss" but was subject to various exceptions, including "wear, tear, deterioration, mechanical breakdown," and defects in workmanship and construction. (*Id.*; Doc. 42-2). Upon a covered loss, the settlement provisions of the policy provided:

> a. *We* will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the *Declarations*, the damaged part of the property covered under **SECTION I – PROPERTY**

---

[2] State Farm's brief and evidentiary support is found at Doc. 42.

**COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

(1) until actual repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged part of the property, up to the applicable limit of liability shown in the *Declarations*, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, *we* will pay the covered additional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the *Declarations*, whichever is less;

(3) to receive any additional payments on a replacement cost basis, *you* must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify *us* within 30 days after the work has been completed….

(Doc. 42-2, PageID.243) (emphasis in original).

Actual cash value ("ACV")—the amount paid prior to repair being completed, as described above—is defined as "the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation." (*Id.*, PageID.226).

On or about June 22, 2023, Plaintiff Ahdy Bolis reported an insurance claim to State Farm. (Doc. 42, n.3, PageID.172). On July 19, 2023, State Farm adjuster Donald Grantham inspected the property and found no damage to the dwelling; the report listed, "Interior: No damage." (Doc. 42-3, PageID.268). On September 22, 2023, Moses & Son Construction LLC sent State Farm a "supplement estimate for hail damages reported [o]n June 22 with supporting photos showing hail damage to roof…." (Doc. 42-3, PageID.292). That estimate reached a replacement cost value of $44,897.04. (*Id.*). State Farm sent its previous inspector, Grantham, for a second inspection on

October 10, 2023. (*Id.*, PageID.266). State Farm case notes reflect the second inspection found no damage; materials showing normal wear and tear for their age; and that any loss would remain below deductible. (*Id.*). A subsequent note from Grantham on October 14, 2023, indicates there were "a few small dents on the copper roof and turtle vent" which were determined to be unrelated to the June storm. (*Id.*, PageID.265). State Farm closed the claim. (*Id.*). State Farm received notification that the Plaintiffs retained counsel on January 23, 2024, and received a demand letter on August 13, 2024. (*Id.*).

The demand letter contained documentation from Rubics Consulting, which Plaintiffs hired to conduct an inspection on February 23, 2024. (Doc. 49-6, PageID.575). The Rubics' estimate reflected a replacement cost value of $55,919.16 for the roof and other miscellaneous exterior damages. (Doc. 42-3, PageID.305).

Based on the Rubics report, State Farm revised its decision on August 19, 2024. (*Id.*, PageID.264) ("decision was changed to cover 12 wind damaged shingles"). State Farm determined this was a loss below deductible, and documents reflected "damage that is consistent with wear, tear, or deterioration which is not covered under the policy." (Doc. 42-3, PageID.276). State Farm Claim Specialist Mark Westermayer issued a "Loss Below Deductible" letter on August 19, 2024, which included State Farm's estimate for replacement cost value of $787, below Plaintiffs' $7,393 deductible. (*Id.*).[3]

---

[3] State Farm refers to this correspondence as a "Loss Below Deductible" letter rather than a denial.    (Doc. 42-3, PageID.276).

Plaintiffs filed their civil action on October 10, 2024. (*See* Doc. 1). On November 14, 2024, State Farm removed the case to this Court under 28 U.S.C. § 1332 based on diversity jurisdiction. (*Id.*, PageID.1). With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (See Docs. 12, 13).

During the course of litigation, Plaintiff Ahdy Bolis testified at a deposition that shortly after the storm he noticed interior water leaks in multiple rooms of the house. (Doc. 42-1, PageID.198-200). He additionally testified that he had the roof replaced by B&B Roof and Construction for approximately $30,000 in May 2025. (*Id.*, PageID.194-95).[4]

Plaintiffs received an estimate for interior repair from Integrity Remodeling and Construction LLC ("Integrity") on June 27, 2025, which totaled approximately $20,440. (Doc. 49-4, PageID.558). A subsequent inspection by State Farm found approximately $6,000 in interior damage. (*See* Doc. 49-5, PageID.561). New estimates were calculated for replacement cost value, but were still less than the deductible. (*See id.*).

## III.    Standard of Review

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

4 "Exterior damage," including the roof replacement, is not part of the operative motion.

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hitt v. CSX Transp., Inc.*, 116 F.4th 1309, 1315 (11th Cir. 2024) (citations omitted).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet this burden, the movant can present evidence showing that there is no genuine dispute of material fact, or show that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.' " *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir.2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991)).

When assessing a summary judgment motion, the court's function is not to make "credibility determinations" and "weigh the evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the court must "view all of the evidence

in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011).

While "nothing in Rule 56 addresses the method by which parties make or respond to assertions of fact[,] ... many districts have local rules regulating how parties are to make or respond to assertions of fact." 2 Steven S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary § 56:39 (June 2025); *see* Fed. R. Civ. P. 56 advisory committee's note (2010) ("Subdivision (c)(1) addresses the ways to support an assertion that a fact can or cannot be genuinely disputed. It does not address the form for providing the required support."). Civil Local Rule 56 states that the "non-movant's brief must include: (1) all facts relied upon, each supported by a specific, pinpoint citation to the record; (2) all challenges to the movant's asserted facts; and (3) argument supported by legal authority as appropriate. The non-movant must also file all evidence relied upon." Civ.LR. 56(b). Under Federal Rule 56(e), if a party fails to properly support or address a fact, the court may "consider the fact undisputed for purposes of the motion...." Fed. R. Civ. P. 56(e)(2). This is reflected by Civil Local Rule 56(d), which states the "Court will deem uncontroverted material facts to be admitted solely for the purpose of deciding the motion for summary judgment."

## IV.    Analysis: Motion to Strike

State Farm's motion for summary judgment is contingent on its motion to strike, so the Court will first determine the admissibility of the objected-to evidence.

(Doc. 50). State Farm moves to strike the Integrity estimate (Doc. 49-4) as untimely and as hearsay. (Doc. 50, PageID.581).

State Farm asserts that Plaintiffs' Rule 26(a)(2) expert disclosures were due on June 7, 2025, under the Court's Rule 16(b) Scheduling Order. (Doc. 23, PageID.115). The Integrity estimate was produced on June 27, 2025. (Doc. 50-2). State Farm contends the estimate contains untimely expert opinions that should be excluded under Rule 37(c)(1), and further argues the estimate is hearsay that warrants striking under Rule 12(f). (Doc. 50, PageID.581-82).

Plaintiffs respond that Rule 12(f) applies to pleadings and is not a proper mechanism to strike evidentiary materials submitted in connection with summary judgment. (Doc. 53, PageID.603). Plaintiffs also contend the Integrity estimate is "ordinary fact/damages evidence from a contractor, not a retained expert report under Rule 26(a)(2)(B)." (*Id.*, PageID.604). According to Plaintiffs, "Integrity's scope-of-work and line-item pricing are based on the contractor's personal knowledge and business experience" and therefore fall within lay or non-retained opinion testimony under Federal Rule of Evidence 701 rather than expert testimony under Rule 702. (*Id.*).

Plaintiffs further argue there is no prejudice because the estimate was produced on June 27, 2025, leaving State Farm time to pursue discovery from Integrity, and State Farm conducted an interior inspection of the property after receiving the estimate. (Doc. 53, PageID.604). Plaintiffs also contend that, under Rule 56(c)(2) and Eleventh Circuit precedent, the Court may consider material at summary judgment if it "could be reduced to admissible evidence at trial." (*Id.*).

Courts have reached differing conclusions as to whether Rule 12(f) permits striking materials submitted with motions or briefs, because Rule 12(f) applies to "pleadings." *See Jeter v. Montgomery Cnty.*, 480 F. Supp. 2d 1293, 1296 (M.D. Ala. 2007); *Long-Hall v. USA Ready Mix*, 2010 WL 11496945, at *2–3 (N.D. Ga. Feb. 2, 2010), *report and recommendation adopted*, 2010 WL 11507392 (N.D. Ga. Mar. 3, 2010). Regardless, where Rule 12(f) is ill-suited, a court may exercise its inherent authority to manage its docket and enforce applicable rules and orders. *See English v. CSA Equip. Co., LLC*, 2006 WL 2456030, at *2 n.5 (S.D. Ala. Aug. 22, 2006). As such, striking versus exclusion is largely irrelevant, but here, the mechanisms for excluding the contested document are provided by Rule 37(c)(1) and Rule 56(c)(2). "The Court therefore construes the motions to strike as motions to exclude the challenged evidence or to assign it no weight." *Collar v. Austin*, 2015 WL 5444347, at *2 (S.D. Ala. Sept. 15, 2015), aff'd, 659 F. App'x 557 (11th Cir. 2016) (footnote omitted).

## A. Rule 26(a)

Rule 26(a)(2)(A) requires a party to disclose "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." On June 27, 2025, Plaintiffs emailed State Farm that they were "supplementing the discovery" with an attached "estimate." (Doc. 50-2, PageID.590). The attachment is a forwarded email, originally from Integrity to Plaintiffs. (*Id.* at 591). The document lists proposed repairs and assigns lump-sum prices per room, to bring "back to original condition." (*Id.*) (hereinafter, the Integrity "estimate"). No itemized pricing,

cause of damage, or explanation is provided in the one-page document. Plaintiffs' opposition brief describes this as an "estimate … scoping repairs in the rooms where leaks were reported…." (Doc. 49, PageID.532). No supporting affidavit or testimony is provided regarding the Integrity estimate.

Rule 26 distinguishes between retained experts, who must provide a written report under Rule 26(a)(2)(B), and non-retained experts, who must at least provide disclosure of "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii); *see also Cedant v. United States*, 75 F.4th 1314, 1324 (11th Cir. 2023). If a party fails to identify a witness as required by Rule 26(a), the party is not allowed to use that information or witness at trial unless the failure was substantially justified. *See* Fed. R. Civ. P. 37(c)(1).

State Farm does not argue which subsection should apply; rather, it argues that Plaintiffs failed to disclose any Integrity representative as an expert by the Rule 16(b) deadline. (Doc. 54, ¶ 6, PageID.608). Plaintiffs' two-page response asserts the estimate is lay evidence, thus Rule 26 is not applicable. (*See* Doc. 53, PageID.604).

The Integrity estimate reflects opinions regarding the scope of work required and the cost of returning the property to "original condition." (Doc. 49-4, PageID.557).

Plaintiffs assert that "Integrity's scope-of-work and line-item pricing are based on the contractor's personal knowledge and business experience…." (Doc. 53, PageID.604).[5]

Rule 702 of the Federal Rules of Evidence provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that … the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue…."

Scope-and-cost determinations generally require specialized knowledge and are commonly treated as expert opinion under Rule 702. As a court in this Circuit has stated:

> First, "it is well-settled that expert evidence is generally necessary to establish the cause and scope of damage." *Porben v. Atain Specialty Ins. Co.*, 546 F. Supp. 3d 1325, 1330 (S.D. Fla. 2021); *see also State Farm Fire & Cas. Co. v. Williams*, 926 So. 2d 1008, 1017 (Ala. 2005) (finding that insured failed to prove breach of contract claim when only evidence of repair costs was insured's testimony based on estimate). Courts routinely find that repair estimates constitute expert testimony because producing the estimate requires the witness to "forecast the amount, type, and costs of materials needed, as well as the amount of labor required to complete the long list of repairs." *Pendarvis v. Am. Bankers Ins. Co. of Fla.*, 354 F. App'x 866, 869 (5th Cir. 2009) (interpreting Fed. R. Evid. 702 concerning expert testimony); *see also*[] *Ivy Marine Consulting, LLC v. Monarch Energy Partners, Inc.*, 2019 WL 1173356, *2 n.4 (S.D. Ala. Mar. 13, 2019) (collecting similar cases).

*Frankenmuth Mut. Ins. Co. v. Five Points W. Shopping City, LLC*, No. 2:20-CV-1288-KOB, 2022 WL 949888, at *17 (N.D. Ala. Mar. 29, 2022).

---

[5] The one-page estimate reflects lumpsum amounts by room, and contains no itemized line items or explanation. (Doc. 50-2, PageID.591).

"While some courts have permitted lay testimony as to itemized repairs already completed on a damaged piece of property, the court is unaware of any case permitting estimates of prospective repairs to be offered as lay testimony and exhibits." *Mortuary v. Allstate Indem. Co.*, 2022 WL 17835498, at *2 (M.D. Ala. Dec. 21, 2022) (citing *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1223 (11th Cir. 2003)) (internal citations omitted).

Accordingly, the estimate is expert-opinion evidence governed by Rule 26(a), and it could be used at summary judgment or trial only if supported by a properly disclosed expert witness.

Plaintiffs did not disclose any Integrity witness as an expert by the deadline in the Scheduling Order. (Doc. 23, PageID.115). Nor did they provide any Rule 26(a)(2)(C) disclosure summarizing the opinions Integrity would offer and the bases for those opinions. Forwarding a proposal email does not satisfy Rule 26(a)(2).

Rule 37 provides that if a party fails to identify a witness as required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Court has broad discretion in applying Rule 37(c)(1); however, absent a showing of justification or harmlessness, exclusion is automatic. *See Glass-Wyble v. Geico Ins. Co.*, 2020 WL 5166034, at *3 (S.D. Ala. Aug. 31, 2020) (citing, *e.g., OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008)). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party."

*Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir.2009) (citing *Leathers v. Pfizer*, Inc., 233 F.R.D. 687, 697 (N.D.Ga.2006)).

Consideration of whether a party's failure to timely disclose an expert is "substantially justified" or "harmless" weighs consideration of: "1) the unfair prejudice or surprise of the opposing party; 2) the party's ability to cure the surprise; 3) the likelihood and extent of disruption to the trial; 4) the importance of the evidence; and 5) the offering party's explanation for its failure to timely disclose." *See Glass-Wyble,* 2020 WL 5166034, at *3 (citing *Bradenton Beauty & Barber Academy, Inc. v. First Natl. Ins. Co. of Am.*, 2017 WL 915242, *1 (M.D. Fla. Mar. 8, 2017)). Moreover, "[u]ntimely expert reports may be properly excluded when the transgressing party 'never sought an extension of time from the district court' and 'failed to justify his disregard for the Court's Order.'" *Id.* (citing *Quevedo v. Trans-Pac. Shipping, Inc.,* 143 F.3d 1255, 1258 (9th Cir. 1998)).

According to Plaintiffs' brief, they never intended to use Integrity as an expert. (Doc. 53, PageID.604) ("[T]he Integrity estimate is ordinary fact/damages evidence from a contractor…."). Further, they argue that "even if the Court were to treat Integrity as an 'expert' for disclosure purposes," the nondisclosure was harmless. (Doc. 53 PageID.604).

Plaintiffs have been on notice since October 2025 that State Farm contested the Integrity estimate as requiring an expert disclosure. (*See* Doc. 42, ¶ 25, PageID.177). While the Court could find that any omission was initially harmless, Plaintiffs have made no attempt to cure the deficiency. The undersigned cannot find

the failure to disclose an expert witness from Integrity as substantially justified or harmless within the meaning of Rule 37(c)(1). Accordingly, the estimate must be excluded. *See Ivy Marine Consulting, LLC*, 2019 WL 1173356, *2 n.4.

## B. Rule 56(c):

Plaintiffs next contend they could "readily present the Integrity estimate's contents at trial through live testimony from the contractor." (Doc. 53, PageID.604). State Farm challenges the Integrity estimate as inadmissible hearsay and seeks to strike it. (Doc. 50, ¶ 5, PageID.582).

Under Eleventh Circuit precedent, a court generally may not consider inadmissible hearsay at summary judgment, but may consider a statement if it "could be reduced to admissible evidence at trial or reduced to admissible form." *Macuba v. DeBoer*, 193 F.3d 1316, 1322–23 (11th Cir. 1999); *see also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012).

However, Plaintiffs fail to resolve the threshold admissibility problem regarding expert opinion. Scope, pricing/costs, and—to the extent it can be construed—causation, are presented here as expert opinions. Because Plaintiffs did not disclose Integrity as an expert witness under Rule 26(a)(2), those opinions are excluded under Rule 37(c)(1) and therefore cannot be "reduced to admissible form" for trial in the manner Plaintiffs suggest. *See Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007) ("Evidence inadmissible at trial cannot be used to avoid summary judgment.").

Moreover, to the extent Plaintiffs seek the report to only provide "observations," where the only support on the record is a standalone estimate with no affidavit or testimony from its author, the Eleventh Circuit has treated such estimates as inadmissible hearsay at summary judgment. *See Matthews v. State Farm Fire & Cas. Co.*, 500 F. App'x 836, 841 (11th Cir. 2012).

Independently of Rule 26, Plaintiffs have offered the Integrity estimate as an unauthenticated, out-of-court statement without an affidavit, deposition testimony, or business-record foundation, and the Court therefore cannot treat it as competent summary-judgment evidence under Rule 56(c).

For similar reasons, courts within this Circuit have declined to consider repair estimates at summary judgment when the party failed both to (1) disclose the estimator as an expert and (2) submit competent testimony supporting the estimate. *See Frankenmuth Mut. Ins. Co.*, 2022 WL 949888; *Progressive Real Est., LLC v. Frankenmuth Ins. Co.*, 2025 WL 2794499 (M.D. Ala. Oct. 1, 2025). While nothing would potentially prevent its author from testifying to firsthand observations at trial, the report cannot be considered here.

Accordingly, State Farm's motion to exclude the Integrity estimate is **GRANTED**.

## V.    Analysis: Summary Judgment

State Farm moves for partial summary judgment: State Farm seeks dismissal of (1) Plaintiffs' breach-of-contract claim as to interior damage and (2) Plaintiffs' bad-faith claim in its entirety. (*See* Doc. 42, PageID.168).

### A. Interior Damage: Breach of Contract

In the operative motion, State Farm argues that any claim for interior damage is due to be dismissed, as Plaintiffs have failed to produce any evidence as to the scope, cause, or cost of repair for any interior damage. (*Id.*). Plaintiffs argue that Plaintiff Ahdy Bolis reported the interior damage and State Farm failed to investigate. (Doc. 49, PageID.536). Additionally, Plaintiffs argue that they may rely on the Integrity estimate to support their interior-damage claim; rely on State Farm's depreciation figures to calculate actual cash value; perform repairs before trial to seek replacement-cost benefits; and interpret the policy to require State Farm to tender payment before any provision may "bar recovery." (*Id.*, PageID.537-39). The latter arguments lend themselves to determinations of recoverable damages specific to the insurance policy (*i.e.,* requiring ACV payments prior to completed repairs, and a two-year time bar on recouping depreciation costs). However, that determination is immaterial absent first finding a genuine dispute over the breach-of-contract claim.

To establish a breach-of-contract claim under Alabama law, a plaintiff must show "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Murdock v. Certain Underwriters at Lloyds, London Pioneer*, 2024 WL 3205404, at *3 (N.D. Ala. June 27, 2024) (citing *S. Med. Health Sys., Inc. v. Vaughn*, 669 So.2d 98, 99 (Ala. 1995) (citations omitted)).

"Under Alabama law, the insured ... normally bears the burden of establishing

that a claim falls within the coverage of the policy." *Nationwide Mutual Fire Insurance Co. v. David Group, Inc.*, 294 So. 3d 732, 737 (Ala. 2019). "In general, the insurer bears the burden of proving the applicability of any policy exclusion." *Acceptance Insurance Co. v. Brown*, 832 So. 2d 1, 12 (Ala. 2001).

Plaintiff Ahdy Bolis testified at deposition that he observed water intrusion and staining in multiple rooms after the alleged storm. (Doc. 49, PageID.536). Bolis testified he observed "water … on the walls of the dining room and the bedroom and the vault at the entrance." (Doc. 49-1, 83:2-4, PageID.544). State Farm's interior estimate includes repairs for the areas Plaintiff identified, and additional areas of the house. (Doc. 49-5). The estimate included repairs for the dining room, bedroom, foyer, stairway, foyer subroom, "unaccessible room," and landing/hallway. (Doc. 49-5, PageID.559). Further, State Farm reached a replacement cost value of $6,733.64. (*Id.*). Viewing the record in the light most favorable to Plaintiffs, the only competent evidence quantifying interior repair cost is State Farm's $6,733.64 estimate, which is below Plaintiffs' $7,393 deductible; Plaintiffs therefore cannot establish compensable contract damages for interior loss, and State Farm is entitled to judgment as a matter of law on the interior-loss component of the breach-of-contract claim. *See Celotex*, 477 U.S. at 324 (whether Plaintiff can "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" (quoting Fed. R. Civ. P. 56(e)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its

favor." *Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (*quoting Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (internal quotation marks and citations omitted)).

## B. Bad Faith

State Farm seeks summary judgment on Plaintiffs' bad-faith claim in its entirety. Plaintiffs argue that genuine disputes exist as to whether interior damage was reported and whether State Farm properly investigated the claim. (Doc. 49, PageID.542).[6] State Farm responds that Plaintiffs cannot establish a breach of contract as to interior damage and, in any event, that State Farm had an arguable basis for its claim-handling position, which forecloses bad-faith liability. (Doc. 42, PageID.187).

> [T]he Alabama Supreme Court first held that, although there are two methods for proving the tort of bad faith, there is only one such tort. The court explained that, whether pleaded as a "normal" or an "abnormal" bad faith, there are four elements with a conditional fifth element, as follows:
>
> (a) an insurance contract between the parties and a breach thereof by the defendant;
> (b) an intentional refusal to pay the insured's claim;
> (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
> (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
> (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure

---

[6] Notably, Plaintiffs' complaint asserts one count of bad faith and makes a "refusal to pay" argument, wherein the briefings highlight a "failure to investigate" claim. (*See* Doc. 49); *see also Lord*, 47 F. Supp. 3d at 1304 (there is only one tort of bad faith). Given the overall analysis, the conclusion reached by the Court would not change.

> to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
>
> [F]or the tort of bad faith refusal to pay, [r]equirements (a) through (d) represent the normal case. Requirement (e) represents the abnormal case.

*Lord v. Allstate Ins. Co.*, 47 F. Supp. 3d 1288, 1304 (N.D. Ala. 2014) (citing *State Farm Fire & Cas. Co. v. Brechbill*, 144 So.3d 248, 257 (Ala.2013)) (internal quotes omitted).

Under Alabama law, "[i]n order to recover under a theory of an abnormal case of bad faith failure to investigate an insurance claim, the insured must show (1) that the insurer failed to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review and (2) that the insurer breached the contract for insurance coverage with the insured when it refused to pay the insured's claim." *Mut. Serv. Cas. Ins. Co. v. Henderson*, 368 F.3d 1309, 1315 (11th Cir. 2004) (citing *Ex parte Simmons*, 791 So. 2d 371, 379 (Ala. 2000)). "An insurer is liable … when it intentionally or recklessly fails to conduct an adequate investigation of the facts and submit those facts to a thorough review." *Id.* (citation omitted).

This District has explained, "whether the claim is a bad-faith refusal to pay or a bad-faith refusal to investigate, the tort of bad faith requires proof of the third element, absence of legitimate reason for denial ...." *Coleman v. Unum Grp. Corp.*, 207 F. Supp. 3d 1281, 1284 (S.D. Ala. 2016) (citation omitted). If a lawful basis for denial actually exists, "the insurer, as a matter of law, cannot be held liable in an action based upon the tort of bad faith." *State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013) (quoting *Gulf Atlantic Life Ins. Co. v. Barnes*, 405 So.2d 916, 924 (Ala. 1981).

Plaintiffs argue interior damage was reported, and dispute exists as to a reasonable investigation. (*See* Doc. 49, PageID.542). In Plaintiff Ahdy Bolis's June 2025 deposition, he testified that he reported a water leak to Grantham (State Farm's adjuster) near the time of the alleged loss, and that "he said that he'd come again and look at it, and then he denied it for the second time…." (Doc. 42-1, 40:2-4, PageID.202). Grantham performed a second inspection and estimate on October 10, 2023. (Doc. 42-3, PageID.266).[7] Those inspections, coupled with State Farm's documented conclusion that much of the condition observed was consistent with wear, tear, or deterioration and its loss-below-deductible assessments, supply at least a "debatable reason" for State Farm's position at the time it made the challenged claim decisions. This defeats bad faith as a matter of law. *See Coleman*, 207 F. Supp. 3d at 1284 ( "[R]egardless of the imperfections of [the insurer's] investigation, the existence of a debatable reason for denying the claim at the time the claim was denied defeats a bad faith failure to pay the claim.") (citation omitted); *see also Preis v. Lexington Ins. Co.,* 508 F. Supp. 2d 1061, 1077–78 (S.D. Ala. 2007), aff'd, 279 F. App'x 940 (11th Cir. 2008) ("The plaintiffs have not articulated how the adjuster's investigation, or [Defendant's] reliance on it, constitutes a failure to investigate for purposes of Alabama's bad faith law."). Plaintiffs do not identify any evidence on the record

---

[7] There is a dispute between a follow-up letter sent by State Farm and the testimony of Ahdy Bolis, as to whether Bolis reported interior damage. (*Compare* Doc. 49-3, PageID.556 *with* Doc. 42-1, 40:2-4, PageID.202). However, it is undisputed a second inspection occurred and a resulting "loss below deductible" estimate was issued. (*See* Doc. 49-3).

related to interior damage between October 2023 and the Integrity estimate in June 2025.

To establish bad faith, whether normal or abnormal, Plaintiffs must prove a breach of the insurance contract and the absence of any legitimate or arguable reason for the insurer's position. *See, e.g., Brechbill*, 144 So. 3d 248, 258. State Farm seeks summary judgment on the bad-faith claim in its entirety. Even assuming *arguendo* that Plaintiffs could prove a breach of contract as to any portion of the claim, the record reflects an arguable basis for State Farm's position. State Farm inspected the property and determined the loss fell below the deductible, and it reached the same conclusion after reinspection. Because the existence of an arguable basis defeats both normal and abnormal bad-faith theories as a matter of law, Plaintiffs' bad-faith claim fails in its entirety.

## VI.    Conclusion

Accordingly, Defendant's motion is **GRANTED** as to Plaintiffs' breach-of-contract claim for interior damage and **GRANTED** as to Plaintiffs' bad-faith claim in its entirety.

- Plaintiffs' claim for breach of contract as to interior damage is **DISMISSED** with prejudice.
- Plaintiffs' claim for bad faith is **DISMISSED** with prejudice.

**DONE** and **ORDERED** this 6th Day of February 2026.

 */s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**